UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re:

HERBERT G. LINDO,

        Debtor.

HERBERT G. LINDO,

        Plaintiff,

– against –

BRIAN FIGEROUX and FIGEROUX & ASSOCIATES,

        Defendants.

**OPINION AND ORDER**

13 Civ. 6918 (ER)

Ramos, D.J.:

      This matter arises out of a Chapter 7 bankruptcy proceeding, in which Herbert G. Lindo ("Plaintiff") was represented by attorney Brian Figeroux of the law firm Figeroux & Associates (collectively, "Defendants").  Plaintiff brought this action against Defendants in bankruptcy court alleging professional malpractice, breach of fiduciary duty, breach of the covenant of good faith and fair dealing, and unjust enrichment.  Plaintiff contends that Defendants mistakenly advised him to file a Chapter 7 bankruptcy petition, when they should have advised him to either file a Chapter 11 or Chapter 13 petition, or resolve his financial problems outside of bankruptcy. Judge Stuart M. Bernstein of the U.S. Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") conducted a two-day hearing during which the Bankruptcy Court heard witness testimony and received documents into evidence.  On September 16, 2013, the Bankruptcy Court issued Proposed Findings of Fact and Conclusions of Law ("PFC") in favor of

Plaintiff, recommending that Defendants be adjudged liable for malpractice, and that Plaintiff recover damages in the sum $134,224.37. *See* Doc. 1.[1] Defendants submitted objections to Judge Bernstein's PFC on October 15, 2013, Doc. 7, and Plaintiff submitted his response to those objections on October 29, 2013, Doc. 8. Defendants replied on November 6, 2013, Doc. 9. For the reasons set forth below, this Court ADOPTS the Bankruptcy Court's PFC, and enters a judgment for Plaintiff in the amount of $134,224.37.

I. Background[2]

On October 6, 2009, Plaintiff approached Defendants to obtain advice about a potential bankruptcy filing. Bankr. Hr'g Tr., 5/20 at 20:1-4. Plaintiff was a taxi driver, and his principal assets were a yellow taxicab and a taxi medallion purchased in 1999. Bankr. Hr'g Tr., 5/20 at 118:13-22. During his initial meeting, Plaintiff filled out Defendants' standard one-page intake form. Ex. 4.[3] The form consisted of five parts: (1) the client's personal information, (2) a list of documents that Plaintiff might have to provide, (3) information regarding Plaintiff's real estate, (4) an attorney notes section, and (5) an attorney fees section. Ex. 4. After Plaintiff completed the form, Defendants' paralegal collected additional information and typed it into the firm's computer using a bankruptcy software program. Bankr. Hr'g Tr., 5/20 at 24:24-25:4. Figeroux did not ask any other questions or take any additional notes during Plaintiff's initial visit. Bankr. Hr'g Tr., 5/20 at 27:8-11.

After meeting with Plaintiff approximately five to eight times, Defendants counseled Plaintiff to file a Chapter 7 bankruptcy petition, which he did on July 13, 2010. Bankr. Hr'g Tr.,

---

[1] "Doc." refers to the electronic docket for this adversary proceeding.

[2] The following facts are drawn from the Bankruptcy Court hearing transcripts ("Bankr. Hr'g Tr.") dated May 20, 2013 and June 5, 2013, the exhibits and stipulated facts submitted therein, and the PFC issued by Judge Bernstein. The facts are undisputed, except where otherwise noted.

[3] "Ex." refers to the forty-four exhibits identified in Section VI of the Bankruptcy Court's Joint Final Pre-Trial Order for this adversary proceeding, which the parties agreed were admissible.

5/20 at 45:8-11; Stipulated Fact H.[4]  Defendants did not recommend that Plaintiff file under Chapter 11 or Chapter 13, which would have allowed him to retain his assets and pay his creditors pursuant to a court-approved plan.  Bankr. Hr'g Tr., 5/20 at 28:16-19; 86:12-17.  Defendants claim that they did not know Plaintiff owned a taxi medallion before advising him to file a Chapter 7 petition.  Bankr. Hr'g Tr., 5/20 at 27:25-28:15; 45:8-11.  Importantly, Defendants concede that if they had known about the medallion, they would not have recommended that Plaintiff file under Chapter 7.  Bankr. Hr'g Tr., 6/5 at 120:18-121:01.

In addition to the Chapter 7 petition, Defendants prepared Plaintiff's schedules ("Schedules") and Statement of Financial Affairs ("SOFA"), which were filed along with the petition.  *See* Exs. 6, 8.  As the Bankruptcy Court found, the Schedules and SOFA contained a number of errors, inconsistencies, and red flags:

- Schedule A stated that Plaintiff owned a single family dwelling worth $341,244.00 with no secured debt.  Ex. 6 at P0006.  Although the listed property had been transferred pursuant to a foreclosure sale Plaintiff did not exempt the property.

- Schedule D listed two secured creditors, Litton Loan Servicing with a $312,000.00 claim and Lomto FCU ("Lomto") with a $311,582.00 claim.  Ex. 6 at P0011.  Figeroux testified that he thought both claims were secured by the same house listed in Schedule A.  Bankr. Hr'g Tr., 5/20 at 31:11-19.  Figeroux conceded that if Lomto's lien was secured by Plaintiff's house it was a mistake not to list it on Schedule A.  Bankr. Hr'g Tr., 5/20 at 32:6-9.

- Also, the Chapter 7 Individual Debtor's Statement of Intention stated that Plaintiff intended to surrender and retain the same property listed in Schedule A, an impossibility.

- Schedule B failed to list Plaintiff's medallion as an asset.  Ex. 6 at P0009.

---

[4] "Stipulated Facts" refers to the facts stated in Section IX in the Bankruptcy Court's Joint Final Pre-Trial Order in this adversary proceeding.

- Schedule B indicated that Plaintiff's taxicab was twenty-three years old. Ex. 6 at P0009. Joseph Maniscalco, Esq.[5] ("Maniscalco"), an experienced bankruptcy practitioner, stated at the hearing that he would have questioned listing such an old car under Schedule B. Bankr. Hr'g Tr., 6/5 at 32:12-15.

- Schedule F listed five credit card debts and two educational debts. Ex. 6 at P0013-14. Although three debts were fraudulently incurred by Plaintiff's uncle, Defendants failed to appropriately indicate that these debts were disputed. Ex. 6 at P0013-14.

- Schedule I stated that Plaintiff's average monthly gross income as a taxicab driver was $6,083.33, Ex. 6 at P0017, and Schedule J listed Plaintiff's total monthly expenditures as $7,359.95, Ex. 6 at P0018, yielding a negative monthly cash flow. In fact, Plaintiff's monthly expenditures were overstated by $2,400 and instead of having a negative cash flow Plaintiff actually had a positive cash flow. PFC at 6.

- Despite Plaintiff's positive cash flow, the response to SOFA No. 1 stated that Plaintiff had not earned any gross income from the operation of a business during 2008, 2009, or the first six months of 2010. Ex. 8 at P0020. Figeroux admitted that this response was wrong. Bankr. Hr'g Tr., 5/20 at 38:23-39:2.

- The response to SOFA Question No. 9 stated that Plaintiff had not made any payments relating to debt counseling or bankruptcy, Ex. 8 at P0022, even though Plaintiff had paid Defendants a $3,500 retainer in connection with his bankruptcy filing, Ex. 12 at P0029.

After the Chapter 7 petition, Schedules, and SOFA were filed, Richard E. O'Connell was appointed to serve as Plaintiff's Chapter 7 trustee (the "Trustee"). Stipulated Fact I. On August 11, 2010 the Trustee conducted a 341(a) meeting.[6] Ex. M. Plaintiff attended the meeting with Frank Castel, Esq. ("Castel"), an associate of Figeroux. Bankr. Hr'g Tr., 5/20 at 49:20-50:9. Defendants claim that it was only at this meeting that they discovered Plaintiff had a taxi

---

[5] Mr. Maniscalco was retained as Plaintiff's expert who testified at the hearing before the Bankruptcy Court. Bankr. Hr'g Tr., 6/5 at 41:7-10.

[6] A 341(a) meeting is a meeting of creditors conducted by a bankruptcy trustee "[w]ithin a reasonable time after the order for relief" is issued in a Title 11 case. 11 U.S.C.A. § 341(a).

4

medallion and that Plaintiff owned a 2008 Ford, not a 1987 Ford.[7] Bankr. Hr'g Tr., 5/20 at 49:20-50:14; Ex. 15-A at 1-2.

The Trustee informed Castel that in light of the medallion's significant equity, he would consent to a motion to dismiss the Chapter 7 proceeding if Plaintiff agreed not to refile a Chapter 7 petition for two years. Bankr. Hr'g Tr., 5/20 at 53:8-18; Ex. 15-A, at 3-4. The Trustee further explained that if the case remained in bankruptcy, he could sell the medallion and pay off Plaintiff's creditors. Ex. 15-A, at 3-4. On August 26, 2010, Defendants filed a motion to dismiss. Bankr. Hr'g Tr., 5/20 at 52:24-53:3; Ex. 16. However, five days later Defendants withdrew the motion to make corrections identified by the Trustee,[8] and never renewed it. Bankr. Hr'g Tr., 5/20 at 57:1-4; Ex. 17. As a result, the Chapter 7 proceeding continued. Ex. 17.

After Defendants withdrew the motion to dismiss, the Trustee took steps to recover the Plaintiff's taxicab and medallion. Stipulated Fact P; *see* Ex. 21. On September 24, 2010, the Trustee filed a motion to compel turnover of the taxicab and medallion. Stipulated Fact P; *see* Ex. 21. Figeroux testified that they attempted to settle the matter with the Trustee,[9] Bankr. Hr'g Tr., 5/20 at 58:23-25, but they made no effort to oppose the Trustee's motion to compel. Bankr. Hr'g Tr., 5/20 at 60:7-15.

After Defendants failed to oppose the Trustee's motion to compel, the Bankruptcy Court granted the Trustee's motion in an Order dated October 20, 2010 (the "Turnover Order").

---

[7] Defendants subsequently submitted amended schedules that listed the taxi medallion, though the Schedules and SOFA continued to state that Plaintiff owned a 1987 car, that he had no gross income for 2008, 2009 or 2010, and that he made no payments for debt counseling or bankruptcy. Ex. 18 at P0044; Ex. 20 at P0046; Ex. 20 at P0048.

[8] The ground for dismissal – as suggested by the Trustee – was Plaintiff's intention to refinance his medallion loan and pay his creditors outside of bankruptcy. However, the motion to dismiss made no mention of Plaintiff's intention to refinance the medallion or pay his creditors and was therefore patently deficient. PFC at 8, fn. 5.

[9] Figeroux testified that the Trustee insisted on approximately $137,000 to pay the creditors plus an additional $35,000 for administrative expenses. Bankr. Hr'g Tr., 5/20, at 64:13-15; 69:17-19. According to Defendants, the $35,000 administrative fee was too high for them to accept the settlement. Bankr. Hr'g Tr., 5/20, at 69:1-5.

Stipulated Fact Q; Ex. 27. Plaintiff did not comply with the Turnover Order, and as a consequence, on November 15, 2010, the Bankruptcy Court signed an Order to Show Cause submitted by the Trustee seeking, *inter alia*, seizure of the taxicab and taxi medallion. Bankr. Hr'g Tr., 5/20 at 70:13-71:17; Ex. 29. Defendants again failed to oppose the Trustee's motion, and by Order on December 13, 2010, the Court authorized the U.S. Marshal to seize the taxicab and medallion for the Trustee. Bankr. Hr'g Tr., 5/20 at 72:8-11, 73:5-13; Ex. 32. On or about December 31, 2010, the Trustee recovered Plaintiff's assets. *See* Stipulated Fact V.

Aside from attempting to settle, Defendants only advice to Plaintiff was to surrender the taxicab and medallion in accordance with the Turnover Order, Bankr. Hr'g Tr., 5/20 at 59:14-23, and to find new counsel because Defendants were "not comfortable"[10] with the issues surrounding the case, Bankr. Hr'g Tr., 5/20 at 66:20-67:1. Defendants did not seek to dismiss the Chapter 7 proceeding, respond to the Trustees motions, or convert the proceeding to a chapter of the Bankruptcy Code that would have allowed Plaintiff to retain his assets. *See* Stipulated Fact P; *see also* Ex. 21, Ex. 27, Ex. 29, Ex. 32; Bankr. Hr'g Tr., 5/20 at 58:23-25, 60:11-15, 72:8-11, 72:25-73:3.

After the seizure of the taxicab and medallion, Plaintiff ended his relationship with Defendants and hired counsel from the firm Jaspan Schlesinger LLP ("Jaspan"). Stipulated Fact X. Plaintiff then moved to convert to Chapter 11. Stipulated Fact Z. After initially opposing the motion, the Bankruptcy Court ordered the case converted on May 5, 2011. *See* Stipulated Facts DD, EE. As a result, on May 7, 2011, approximately four months after they had been seized, Plaintiff regained possession of his taxicab and medallion. Stipulated Facts EE, HH. After the Bankruptcy Court authorized the refinancing of Plaintiff's medallion on August 17, 2011, Plaintiff satisfied the Chapter 11 plan. Stipulated Facts JJ, KK; Ex. 34.

---

[10] The record does not disclose the source of Defendants' "discomfort."

6

On March 12, 2012, the Bankruptcy Court issued an Order Granting Applications for Allowance of First and Final Compensation and Reimbursement of Expenses. Stipulated Fact LL; Ex. 41. In the Order the Trustee and his professionals were awarded $78,905.06. Stipulated Fact LL; Ex. 41. Plaintiff filed this lawsuit claiming legal malpractice on September 28, 2011. PFC at 12. On May 20, 2013 and June 5, 2013, the Bankruptcy Court held a two-day hearing on the malpractice claim.

On September 16, 2013, the Bankruptcy Court issued the PFC. PFC at 27. In the PFC, the Bankruptcy Court found that Defendants committed malpractice by advising Plaintiff to file bankruptcy under Chapter 7. PFC at 18. Specifically the Bankruptcy Court found that: (1) Defendants were aware that Plaintiff owned a taxicab and taxi medallion prior to Plaintiff filing under Chapter 7 bankruptcy, (2) Defendants acknowledged that advising Plaintiff to file under Chapter 7 was error given Plaintiff's assets, (3) Defendants made numerous errors in preparation of the Chapter 7 petition and failed to adequately correct those errors, (4) Defendants "abandoned" Plaintiff by failing to address the Trustee's motions or advise Plaintiff of his right to convert to a favorable chapter which led to substantial administrative expenses, and (5) Defendants' negligent representation was the proximate cause of Plaintiff's damages. PFC at 14-20.

As a result, the Bankruptcy Court recommended that Plaintiff be entitled to recover: (1) the administrative expenses related to the Chapter 7 bankruptcy, (2) the balance of time Defendants billed during the Chapter 7 bankruptcy,[11] (3) four months of lost wages, and (4) the retainer fee paid to Defendants. PFC at 20-26. The total amount of damages recommended was $134,224.37. PFC at 27.

---

[11] In the Bankruptcy Court's calculation, Judge Bernstein deducted certain billable hours that were too vague to show any connection to Plaintiff's Chapter 7 bankruptcy proceeding.

7

**II. Jurisdiction and Standard of Review**

This Court has jurisdiction over Plaintiff's common law malpractice claims under 28 U.S.C. Section 1334, because those claims are related to Plaintiff's Chapter 7 bankruptcy proceeding. *In re Tronox Inc.*, 14 Civ. 5495 (KBF), 2014 WL 5825308, at *3 (S.D.N.Y. Nov. 10, 2014).

In bankruptcy, there are two types of proceedings, "core" and "non-core." *See* 28 U.S.C. § 157(b)(1). The bankruptcy court may hear and determine all core proceedings. *Id.* To determine whether a proceeding is core, the court considers "whether claims that appear to be based in state law are really an extension of the proceedings already before the bankruptcy court." *Baker v. Simpson*, 613 F.3d 346, 350 (2d Cir. 2010). Since Plaintiff's malpractice claims are "inseparable from the bankruptcy context" and "would have no practical existence *but for* the bankruptcy," they are "core," and jurisdiction is properly with the bankruptcy court. *See id.* at 350-51.

Although this is a core proceeding, a bankruptcy court may determine that it lacks the authority to issue a final order. *Stern v. Marshall*, 131 S. Ct. 2594, 2603-04 (2011). In that case, the bankruptcy court submits proposed findings of fact and conclusions of law to a district court. 28 U.S.C. § 157(c)(1); *Stern*, 131 S. Ct. at 2604; *see In re Tronox Inc.*, 2014 WL 5825308, at *4. Because the parties in this case did not consent to the Bankruptcy Court's authority to issue a final order, the Bankruptcy Court, in accordance with *Stern v. Marshall*, 131 S. Ct. at 2603, submitted proposed findings of fact and conclusions of law to this Court.

In reviewing a bankruptcy court's proposed findings of fact and conclusions of law, district courts review all matters that are "timely and specifically objected to" *de novo*.

U.S.C. § 157(c)(1); *In re Tronox Inc.*, 2014 WL 5825308, at *4. A district court may then enter a final order or judgment. *Id.* (citing 28 U.S.C. § 157(c)(1)).

Plaintiff argues that Defendants did not make any specific objections to the PFC, and that therefore the Court should employ a "clear error" standard. Doc. 8 at 12-13 (citing *Vega v. Artuz*, 97 Civ. 3775, 2002 WL 31174466, at *2 (S.D.N.Y. Sept. 30, 2002) ("[M]erely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original [papers] will not suffice to invoke *de novo* review.")). But Defendants did make specific objections to the Bankruptcy Court's findings – they pointed to disputed portions of the PFC, explained the reasons for their objections, and cited relevant legal authority. *Compare, e.g.*, *Mario v. P & C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) (finding that a one sentence "bare statement" that it was error to deny appellant's motion did not constitute a specific objection); *Vega*, 2002 WL 31174466, at *2 (finding that Petitioner's statement that he objected to the bankruptcy court's report "in its entirety on pages nine through twelve . . . thirteen through twenty . . . twenty-one through twenty-seven" did not constitute a specific objection). Thus, the Court reviews Defendants' objections to the Bankruptcy Court's PFC *de novo*.

**III.    Discussion**

To sustain a claim for legal malpractice under New York law,[12] a plaintiff must establish: (1) attorney negligence, (2) that the negligence was the proximate cause of the loss, and (3) actual damages. McCord v. O'Neill, 369 F. App'x 237, 239 (2d Cir. 2010).

---

[12] Since a legal malpractice claim is a state law claim, this Court must apply New York substantive law. *See Carney v. Philippone*, 368 F.3d 164, 165-66 (2d Cir. 2004) (applying New York law to an appeal from a district court decision regarding legal malpractice in a bankruptcy case).

A.   <u>Defendants' Negligent Representation Constitutes Legal Malpractice</u>

An attorney is negligent if he "failed to exercise the ordinary reasonable skill and knowledge commonly possessed by a member of the legal profession." *Rubens v. Mason*, 387 F.3d 183, 189 (2d Cir. 2004) (citing *Darby & Darby*, P.C. v. VSI Int'l, Inc., 95 N.Y.2d 308, 313 (2000)).  An attorney may be liable for legal malpractice based on his "ignorance of the rules of practice, failure to comply with conditions precedent to suit, or for his neglect to prosecute or defend an action." *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006) (quoting *Bernstein v. Oppenheim & Co.*, 554 N.Y.S.2d 487, 489-90 (N.Y. App. Div. 1990)) (internal quotation marks omitted).  However, "selection of one among several reasonable courses of action" does not constitute legal malpractice.  *Id.*

Defendants object to the Bankruptcy Court's finding that they failed to exercise the reasonable skill and care commonly possessed by a member of the legal profession.  Doc. 7 at 5-6.  Defendants claim that Plaintiff did not inform them that he owned a taxi medallion, and that therefore they should not be held liable for the Chapter 7 filing.  *Id.*  However, the Bankruptcy Court concluded that "[d]espite Figeroux's assertion that he did not know about the medallion prior to filing, the schedules he prepared and his own sworn testimony showed that he did."  PFC at 16.  Specifically, on May 2, 2012, Figeroux submitted an affirmation in opposition to Plaintiff's motion for default judgment which conceded:  "The Debtor disclosed that he owned a taxi medallion and a taxi during the preparation of the petition."  Bankr. Hr'g Tr., 5/20 at 74:14-24.

In addition, the Schedules and SOFA prepared by Defendants and filed with the Chapter 7 petition expressly stated that Plaintiff owned a yellow taxicab and that he also made a monthly payment of $2,400.00 toward a "medallion."  PFC at 6.  Figeroux's testimony that Defendants

10

did not connect the "medallion" payments with Plaintiff's ownership of a taxicab to infer that Plaintiff owned a taxi medallion strains credulity. *Id.* at 6, ¶ 4; Bankr. Hr'g Tr., 5/20 at 34:9-25. Even if Defendants did not make the inference, either Plaintiff's ownership of a taxicab or his substantial monthly payments towards a "medallion", alone, should have led Defendants to inquire about Plaintiff's potential ownership of a taxi medallion. In light of the foregoing, this Court adopts the PFC's finding that Defendants knew, or should have known, that Plaintiff owned a taxi medallion.

Since Defendants were or should have been aware of Plaintiff's medallion, filing under Chapter 7 was not a reasonable course of action. In a Chapter 7 bankruptcy proceeding, a debtor is required to surrender his non-exempt property to his trustee. *See* 11 U.S.C. § 542(a). The trustee then liquidates the property and distributes the proceeds to the debtor's creditors. *See* 11 U.S.C. § 704(a)(1). As the Bankruptcy Court recognized, a person in Plaintiff's situation would have only two plausible options: "(1) refinance the [medallion] and pay the creditors outside of bankruptcy; or (2) file a chapter 11 or chapter 13 proceeding…" PFC at 15. Both options would have allowed Plaintiff to retain his taxicab and medallion and avoid the Trustee from accruing administrative expenses.

Maniscalco, testifying as an expert at the hearing, confirmed this approach. After reviewing Plaintiff's information, Maniscalco testified that he would not have advised Plaintiff to file under Chapter 7. Bankr. Hr'g Tr., 6/5 at 31:23-32:1. According to Maniscalco, because the medallion had substantial equity, Plaintiff had the option to refinance it, and negotiate a payment plan with his creditors. Bankr. Hr'g Tr., 6/5 at 33:2-7. As the Bankruptcy Court recognized, "[C]hapter 7 was the worst place for [Plaintiff] to be, and no competent bankruptcy attorney would have [suggested filing under Chapter 7]." PFC at 14.

Additionally, while Defendants disclaim that they knew about the medallion prior to filing, they concede that if they had known about the medallion, they would not have advised Plaintiff to file under Chapter 7.  Bankr. Hr'g Tr., 6/5 at 120:24-121:01.  Therefore, because the Bankruptcy Court correctly found that Defendants knew about Plaintiff's medallion prior to filing the Chapter 7 petition, and because filing Plaintiff under Chapter 7 was not a reasonable course of action under the circumstances, Defendants committed legal malpractice by failing to exercise the ordinary reasonable skill and knowledge commonly possessed by a member of the legal profession.

In addition to Defendants' negligent advice to file Plaintiff under Chapter 7, Defendants were also negligent in the preparation of Plaintiff's Chapter 7 petition.  As noted above, Plaintiff's Schedules and SOFA were deficient in several material respects.[13]  Had Defendants properly reviewed the Schedules and SOFA, they would have known that they were inaccurate and required further attention.  When problems are revealed during an attorney's independent verification, the attorney should conduct a more thorough examination, "by asking questions, obtaining additional documents, or by some other means".  *In re Parikh*, 508 B.R. 572, 586 (Bankr. E.D.N.Y. 2014) (citing *In re Seare*, 493 B.R. 158, 209-11 (Bankr. D. Nev. 2013)).  Furthermore, Defendants have a duty to "independently verify publicly available facts to determine if the client representations are objectively reasonable."  *See In re Parikh*, 508 B.R. at 585-86 (citing *Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1329-30 (2d Cir.1995).  Although Defendants met with Plaintiff numerous times and had every opportunity to verify the information on the forms, they failed to do so.

---

[13] In addition to failing to note the ownership of the medallion, Defendants, among other things, failed to exempt Plaintiff's home, which was in foreclosure; failed to list the Lomto lien on Schedule A; mistakenly asserted that Plaintiff intended to surrender *and* retain the same property; and wrongly asserted that Plaintiff had not earned any gross income from the operation of a business for over two and one-half years.

Defendants further argue that their choice to negotiate a settlement with the Trustee was a reasonable course of action, and that it was Plaintiff's failure to comply with the Trustee's Turnover Order that ultimately hindered their ability to reach an appropriate settlement. Doc. 7 at 6. However, it was not Plaintiff's failure to comply with the Turnover Order, but Defendants own inaction that prevented the Chapter 7 proceeding from being resolved. The facts indisputably support this conclusion.

First, after filing a motion – at the Trustee's suggestion – to dismiss the Chapter 7 proceeding, Defendants were compelled to withdraw it, again at the Trustee's suggestion, due to obvious errors in the papers. Defendants never renewed their motion to dismiss the Chapter 7 proceeding despite the Trustee's stated willingness to consent to a dismissal. Subsequently, they failed to respond to the Trustee's motion to compel, failed to respond to his motion for an order to show cause, and failed to respond to his motion to hold Plaintiff in contempt of court. Defendants did not even advise Plaintiff of his right to convert the case to Chapter 11 or Chapter 13, which could have been done at any time. 11 U.S.C. § 706(a). Instead of taking any of these reasonable steps, as the Bankruptcy Court aptly found, the Defendants "abandoned" Plaintiff. PFC at 19. As a result, Plaintiff was stripped of his taxicab and medallion, and was left to foot the Trustee's growing bill. In addition, because Plaintiff's livelihood depended on his taxicab and medallion, the Trustee's seizure of these assets rendered Plaintiff unable to work for four months. Stipulated Facts EE, HH. This seizure could have been avoided entirely if Defendants had done their due diligence before filing Plaintiff under Chapter 7, or diligently responded to the Trustee's filings.

For all of these reasons, this Court adopts the PFC's finding that Defendants were negligent in their representation of Plaintiff.

B. <u>Defendants Proximately Caused Plaintiff's Damages</u>

To establish liability in a legal malpractice action, an attorney must have been the proximate cause of a plaintiff's damages. *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 118 (2d Cir. 2005). To prove proximate cause a plaintiff must show "but for the defendant's negligence, he or she would have prevailed in the underlying action or would not have sustained any damages." *Id.* (quoting *Aversa v. Safran*, 757 N.Y.S.2d 573, 574 (N.Y. App. Div. 2003)).

Because legal malpractice is a form of negligence, causation is determined using a reasonable person standard. *Rubens*, 387 F.3d at 189. Therefore, the fact-finder must decide, "whether the lawyer fell below the applicable standard of care, and if so, whether a reasonable fact-finder in the underlying suit would have arrived at a different result but for the attorney's negligence." *Id.*

Defendants argue that they did not cause Plaintiff's damages. Rather, they claim that Plaintiff's failure to inform Defendants of his taxi medallion and his failure to comply with the Turnover Order were the proximate causes of Plaintiff's damages. Doc. 7 at 6-7.

The PFC found damages as follows:

(i) $78,905.06 for the Chapter 7 administrative expenses paid to the Trustee, his counsel, and his auctioneer (the "Chapter 7 Administrative Expenses"), PFC at 20;

(ii) $40,131.25, plus expenses of $554.74, for attorney's fees incurred by Plaintiff's replacement counsel, Jaspan, to convert the case to Chapter 11 ("Jaspan's Fees"), *Id.* at 24;

(iii) $11,133.32 in lost wages during the period of time that Plaintiff's taxicab and medallion were seized ("Lost Wages"), *Id.*; and

(iv) $3,500 for the retainer paid by Palintiff to the Defendants for the negligent services rendered (the "Retainer"), *Id.*

In total, the Bankruptcy Court awarded $134,224.37 in damages.[14]  *Id.* at 27.

This Court agrees with the PFC and finds that Plaintiff's damages were proximately caused by Defendants.

First, Plaintiff would not have incurred any of the Chapter 7 Administrative Expenses but for Defendants' erroneous advice to file under Chapter 7.

Even if Defendants first learned of the medallion during the 341(a) meeting, Plaintiff's costs were still relatively low at that time.  PFC at 18-19.  The Trustee had not yet hired a lawyer, an auctioneer, or an accountant, and had not incurred any administrative expenses.  PFC at 19.  Yet Defendants did not renew their motion to dismiss the Chapter 7 proceeding, nor did they advise Plaintiff to convert to a more favorable chapter.  As a result, the Chapter 7 expenses continued to accrue and Plaintiff's most valuable assets were seized.

Defendants argue that Plaintiff's noncompliance with the Turnover Order affected their ability to negotiate a successful settlement with the Trustee, and that this was the proximate cause of Plaintiff's injury.  Doc. 7 at 6-8.  However, it was Defendants' failure to effect the dismissal of the Chapter 7 proceedings, or to respond to the Trustee's motions, that caused the Trustee's administrative costs to skyrocket.  Because the Chapter 7 Administrative Expenses would not have accumulated but for Defendants' negligent representation, Plaintiff is entitled to damages in the amount of $78,905.06.

Plaintiff is also entitled to recover damages stemming from Jaspan's conversion of the case to Chapter 11.  In New York malpractice actions, a plaintiff may recover any litigation expenses incurred to "avoid, minimize, or reduce the damage caused by the attorney's wrongful

---

[14] Defendants do not object to the Bankruptcy Court's calculations of Plaintiff's damages.  Defendants only assert that they were not the proximate cause.  After reviewing the Bankruptcy Court's calculations for clear error, the Court finds no error, clear or otherwise.  Judge Bernstein reached his determination after a careful review of the parties' submissions.  The Court hereby adopts the Bankruptcy Court's calculations of the Chapter 7 Administrative Expenses, Jaspan's Fees, Lost Wages, and the Retainer.

conduct." *Bua v. Purcell & Ingrao, P.C.*, 952 N.Y.S.2d 592, 598 (N.Y. App. Div. 2012); *accord Leach v. Bailly*, 870 N.Y.S.2d 138, 140 (N.Y. App. Div. 2008). As with the Chapter 7 Administrative Expenses, Plaintiff would not have incurred Jaspan's Fees if Defendants had not mistakenly advised Plaintiff to file under Chapter 7 and then repeatedly failed to remedy their error. Defendants' negligence was therefore the proximate cause of Jaspan's Fees and Plaintiff is entitled to damages in the amount of $40,685.99.

Plaintiff is also entitled to four months of lost wages, from the time that the Trustee seized the medallion and taxicab on December 31, 2010, until Plaintiff recovered those assets following conversion to Chapter 11. But for Defendants' erroneous filing of the Chapter 7 case, and their failure to remedy their error, Plaintiff would never have lost his ability to work. He is therefore entitled to $11,133.32 in lost wages.

Finally, Plaintiff is entitled to recover the $3,500.00 retainer he paid to Defendants. "Where an attorney in a bankruptcy case fails to perform competently and efficiently those legal services for which a debtor has contracted, it is appropriate for the [c]ourt to review the compensation arrangement and, among other things, to direct a remittance to the debtor[.]" *Matter of Grant*, 14 B.R. 567, 569 (Bankr. S.D.N.Y. 1981) (citing 11 U.S.C. § 329(b)(2)); *see also Matter of Chin*, 47 B.R. 894, 897 (Bankr. S.D.N.Y. 1984) (The Bankruptcy Court may "deny compensation to a debtor's attorney, to cancel an agreement to pay compensation, or to order return of the compensation paid if 'such compensation exceeds the reasonable value of any such services.'") (quoting 11 U.S.C.A. § 329(b)). Because, Defendants' services were rendered in such a negligent manner that they had no reasonable value, Plaintiff is entitled to recover the $3,500.00 retainer that he paid to Defendants.

## IV. Conclusion

For the reasons set forth above, the Court ADOPTS the Bankruptcy Court's Proposed Findings of Fact and Conclusions of Law and enters final judgment against Defendants in the amount of $134,224.37. The Clerk of Court is respectfully directed to enter judgment accordingly and to close this case.

It is SO ORDERED.

Dated:   December 18, 2015
         New York, New York

                                                          Edgardo Ramos, U.S.D.J.